UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

GREGORY HALE,
    Plaintiff,

vs.                                                                                           03-CV-3177

JOHN BATTLES et al.,
    Defendants.

### Order

    These claims remain: 1) the defendants retaliated against the plaintiff for filing grievances and lawsuits; 2) the plaintiff's exposure to second-hand smoke at Taylorville Correctional Center violated his Eighth Amendment rights; and 3) the defendants discriminated against the plaintiff because of his race.  Before the court is the defendants' summary judgment motion, which is granted for the reasons below.

### Summary Judgment Standard

    A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law.  *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)*;*Fed. R. Civ. P.56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985).  This burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837.  A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position.  *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994).  In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party.  *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).  However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### Undisputed Facts

    1.  During the time in question, plaintiff was serving ten years in IDOC for Aggravated Criminal Sexual Assault, six years (consecutive) for Aggravated Criminal Sexual Abuse and three years (concurrent) for Unlawful Restraint.

2. On February 15, 2001 (during plaintiff's incarceration in Taylorville Correctional Center), defendant Hager wrote plaintiff a disciplinary report accusing the plaintiff of insolence and disobeying a direct order for using obscenities toward the staff.  Plaintiff was subsequently found guilty of the offense at an adjustment committee hearing held on February 19, 2001.  The report says the plaintiff partially admitted his guilt, but the plaintiff denies this.  He says the report was false and was motivated by retaliation for his grievances and lawsuits.

3. Plaintiff asked to be transferred out of Housing Unit 5A (where smoking was allowed in the dayroom but not the bed area) to a completely nonsmoking housing unit.  (D/e 58, Ex. D). On February 28, 2001, plaintiff was moved from 5A to Housing Unit 2A, where smoking was permitted in all areas (the bed area and the dayroom).

4. On March 4, 2001, plaintiff grieved his move from Housing Unit 5A to Housing Unit 2A and requested a move to a non-smoking housing unit. Plaintiff was informed on March 8, 2001 that he had been placed on a waiting list for housing in a non-smoking housing unit, and on March 13, 2001 plaintiff was moved to Housing Unit Number 1, a nonsmoking unit.

5. On one occasion, plaintiff and several other inmates returned to Housing Unit number 1's control area from the Taylorville inmate law library.  Defendant Hager directed the inmates to secure their books in their bed areas and return to the control area so Defendant Hager could send the inmates to lunch as a group. All of the inmates except plaintiff returned to the control area for lunch. After approximately ten minutes of waiting on the plaintiff, Defendant Hager sent the inmates to lunch.  Plaintiff then entered the control area and asked to go to lunch.  Hager refused, he says because plaintiff had not returned timely as ordered.  Plaintiff says Hager's actions were unwarranted and in retaliation for his grievances.

6. Plaintiff at times did not use the locked grievance box located outside defendant Murray's office, choosing instead to deliver his grievances personally to her.  Plaintiff says he did this because defendant Murray would often deny receiving grievances if he used the lock box.  Murray felt uneasy and threatened by plaintiff's frequent visits to personally hand her his grievances.

7. Defendant Murray avers that Plaintiff made her very uneasy and looked for reasons to be in contact with her.  Plaintiff was classified as a stalker and plaintiff refused sex offender treatment.  Plaintiff does not appear to dispute directly that he is a stalker, but he says he was never given a chance to defend himself against allegations of stalking.  The court therefore presumes he denies he was "stalking" anyone or otherwise acting inappropriately.

8. According to a mental health evaluation dated July 25, 2001 (that purports to bear defendant Mahan's signature), plaintiff was referred by female staff who "reported feelings of threat and unease around him."  The evaluation states that plaintiff "denied any inappropriate conduct with staff." The evaluation describes the plaintiff as "extremely defensive and immediately exhibits the following defenses which are typical of sex offenders . . ."  The diagnosis is listed as "Axis II: Sex offender-Adult-Opposite Sex."  The Summary and Treatment

Plan states: "Alert senior staff and security of stalking behavior.  Discuss his case with Mental Health Team.  Sex Offender Treatment to address his issues and current behavior was offered.  Inmate refused once again, the Sex Offender Program." (D/e 58, Ex. G).

     9.  A July 27, 2001 e-mail from defendant Murray (Taylorville Correctional Counselor) to Defendant Mahan (Taylorville psychologist) states (d/e 58, Ex. F):

> Jean,
> Hey, is there anything can be done to get Hale out of this camp?  Remember, I talked to you about him when I first started and you advised me just to confront him.  I did and for a while he stayed away.  Now he is back to coming in for all kinds of little things and always filing asinine grievances.  He makes me VERY uneasy!!  Like I said, I can't understand why someone like him should even be here.  Appreciate your response.  Thanks!

     10.  Defendant Mahan purportedly responded by forwarding Murray's e-mail to Jennifer Ross with the statement (d/e 58, Ex. F):

> Jennifer, this is the same guy that is stalking the librarian.  I think you should do an administrative transfer to a Medium prison. . .  He needs to go and with a cloud over his head.  He is one bad dude!  And this makes two female staff that he makes very uneasy, time to cut off his ***** Jean.  (** in original).

     11.  Plaintiff submitted a piece of paper that appears to purport to be some sort of log by defendant Murray about some of her interactions with plaintiff (d/e 61, p. 49).  The document states in part,

> 7/30/01  . . . .  "Told him he files TOO many grievances."
>
> 8/03/01 . . .    Had personal confrontation with Hale in my office yesterday afternoon.  He was insistent that his mittimus was wrong and that his outdate would change, . . . He was very insistent and I told him to leave my office and not come back.  At the time I had a guard standing in the hall outside my office as he makes me VERY UNEASY. . . . Jean Mahan, psychologist, had told me last spring that Hale is a rapist and since he can't physically do this [control], that he will verbally and mentally try to control.  . . . I contacted Jean Mahan again, to see where the transfer stood that was supposedly being done to get Hale to medium security, due to threat to female staff.  Female librarian feels very threatened by him also.
>
> 8/03/01 . . .    Jim Stevens told me that the transfer was in Springfield for their approval for administrative transfer, due to threat to female staff.  I then spoke to librarian and she was also very relieved that this would soon be history.

12. On August 8, 2001, plaintiff was transferred from Taylorville Correctional Center to Illinois River Correctional Center. The defendants say the transfer was based solely on plaintiff's stalking behavior directed toward two female staff at Taylorville CC. The plaintiff says the transfer was in retaliation for his grievances and lawsuits.

13. A reasonable inference arises that plaintiff's security classification was minimum during his incarceration at Taylorville Correctional Center, and that his security classification increased at Illinois River.

**Analysis**

Plaintiff's case is still at the allegation and speculation stage. He has not presented evidence that might allow a reasonable juror to find for him. His evidence consists of copies of grievances he filed in prison, their denial by prison officials, the disciplinary reports he received, the guilty findings by prison officials on those disciplinary reports, and his unsuccessful appeals. That creates an inference that plaintiff filed many grievances that were denied and that he was disciplined. The leap from these documents (routine in the course of an inmate's incarcerated life) to an inference of retaliation is too far–nothing on the face of these documents suggests any retaliatory motive, and plaintiff has no other evidence that might hint at a retaliatory motive (except as discussed below). Further, there is no evidence that things might have happened differently even if retaliatory motive was present.

Plaintiff's transfer from Taylorville to Illinois River Correctional Center (and defendants' refusal to transfer him back) does warrant more discussion. A reasonable inference does arise that defendant Murray was bothered by the plaintiff's many "asinine grievances," and that she started the wheels in motion to effect plaintiff's transfer. A reasonable inference of retaliatory motive on Murray's part might arise. Yet, to succeed on a retaliation claim, the plaintiff must have evidence that his transfer would not have happened absent the retaliatory motive. *See Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Here, Murray had a legitimate penological reason to get plaintiff transferred: she felt threatened by him, by what she perceived as his stalking behavior. Though he does not make the argument, plaintiff could counter that Murray was lying, but there is no evidence that her proffered reason was pretextual. Her read of plaintiff was buttressed by the psychologist's mental health evaluation, the psychologist's response to Murray's e-mail, plaintiff's conviction for aggravated criminal sexual assault, and plaintiff's diagnosis as a sex offender of adult females. Whether Murray was correct in her assessment of plaintiff's motives is of no moment and is not a question for a jury on this record. Prison officials were not required to dissect the reasonableness of Murray's fears before responding to them. They acted well within their discretion to transfer the plaintiff out of the prison, for the safety and morale of the prison employees, without further investigation and without giving plaintiff a chance to answer the charges. Courts owe a "high degree of deference to the discretion of prison administration to 'adopt policies and practices to maintain the safety and security of this country's penitentiaries.'" *Board v. Farnham*, 394 F.3d 469, 477 (7th Cir. 2005(*quoted cite omitted*). Further, plaintiff had no constitutional right to any procedural due process before his transfer to Illinois River Correctional Center, nor has he identified any constitutionally protected liberty interest in

maintaining his minimum security classification. *Meachum v. Fano*, 427 U.S. 215, 225 (1976)(inmates have no constitutionally protected interest in avoiding transfer to a maximum security prison with more burdensome conditions); *see also Thomas v. Ramos*, 130 F.3d 754, 760 (7th Cir. 1997)(prisoner has no liberty interest in remaining in general population or avoiding transfer to another prison).

The plaintiff's Eighth Amendment claim regarding second-hand smoke barely merits mention. He only resided in Housing Unit 2A (where smoking was permitted in the sleeping areas as well as the day room) for 13 days. This brief period does not rise to the level of cruel and unusual punishment. The plaintiff also says he was moved to the smokier unit in retaliation for his grievances. It is true that the defendants have not explained the reason behind plaintiff's move to the smokier unit, and an inference does arise that he had previously filed grievances asking to be moved to a completely non-smoking unit. An inference of retaliatory motive might arise (or at least cannot be ruled out), but plaintiff has not identified who was personally responsible for the decision to move him. There is no indication that any of the defendants made that decision or played a part in that decision. Even if he had identified those responsible, the court believes 13 days in smokier housing, standing alone as it does in this case, is too *de minimus* to support a jury verdict in a constitutional retaliation claim. *See Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005)*(*For purposes of retaliation claim, "adverse action" is "one that would 'deter a person of ordinary firmness from the exercise of the right at stake.'"*)*. The plaintiff filed a grievance about the transfer to the smokier unit on March 4th, and he was moved to a non-smoking unit just nine days later (light speed in prison time).

Evidence to support the plaintiff's equal protection claim is also lacking. There is not one iota of evidence that any actions adverse to him were motivated by race–he appears to admit this in his response . . ., "Discrimination was not . . . just because of my race, but for the exercising of my protected rights." (d/e 61, p.1, para. 60.). This is the plaintiff's retaliation claim repackaged, which does not survive summary judgment for the reasons above.

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment is granted (d/e 57). The clerk is directed to enter judgment in favor of all the defendants. All pending motions are denied as moot and this case is closed, parties to bear their own costs. Final pretrial and trial dates are vacated.

Entered this 17th Day of February, 2006.

                                              **s\Harold A. Baker**

                                              HAROLD A. BAKER
                                     UNITED STATES DISTRICT JUDGE